# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| DANIEL J. PHILBRICK AND DOVER SPORTS, INC., D/B/A PHILBRICK'S SPORTS | : : : : : |
| Plaintiffs, | : Docket No.: 1:07-cv-00215-JL : |
| v. | : : |
| ENOM, INCORPORATED | : : |
| Defendant. | : : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF CHARLES URSINI

1.      My name is Charles Ursini.  I am a United States citizen residing in the State of Washington. Each statement contained in this declaration is based upon my own personal knowledge, and is true and correct to the best of my personal knowledge, information and belief. I am over the age of eighteen (18), and suffer from no mental or physical disabilities that would render me incompetent to testify in this matter.  I have personal knowledge of the facts discussed herein and, if called to testify, I would and could competently testify to those facts.

2.      I am currently employed by eNom, Inc., the defendant in this litigation, as Senior Vice President, Platform Division.  I have held that position since October 24, 2007.  In my position as Senior Vice President, Platform Division, I am responsible for overseeing and implementing the processes by which eNom acquires and manages domain names.  In the course of carrying out those duties, I have become very familiar with the domain name registration system administered by the Internet Corporation for Assigned Names and Numbers (ICANN), and the processes by which eNom and other registrars register domain names.

3.      eNom is a domain name registrar, meaning that it has been accredited by ICANN to register Internet domain names.  In order to maintain its accreditation with ICANN, eNom must adhere to its Registrar Accreditation Agreement ("RAA") with ICANN.  A true and correct copy of eNom's RAA, dated July 18, 2000 is attached hereto as Exhibit A.

4.      As an ICANN-accredited domain name registrar, eNom receives requests to register domain names on behalf of third-party registrants, who receive rights in those domain names pursuant to a contract with eNom known as a Registration Agreement.  A true and correct copy of eNom's Registration Agreement is attached hereto as Exhibit B.

5.      The process of assigning domain names is overseen by entities known as domain name registries.  When one of eNom's customers requests a domain name from eNom, eNom must attempt to acquire that domain name from the registry which is responsible for that top-level domain.  The domain name registry which oversees the assignment of the .com and .net top-level domains is VeriSign, Inc. ("VeriSign").  VeriSign will assign any available .com or .net domain name to the first registrar which submits a request for that domain name.  If eNom is successful in acquiring a domain name from the registry on behalf of a customer, then eNom identifies that customer as the registrant in the publicly-available WHOIS data which eNom is required to maintain by ICANN.

6.      Among the services offered by eNom are aftermarket domain name auction services, in which an eNom customer can request that eNom attempt to register a domain name being deleted by a domain name registrar.  Customers wishing to participate in eNom's domain name auctions must agree to eNom's Auction Agreement.  A true and correct copy of eNom's Auction Agreement is attached as Exhibit C.

7.      For each domain name which generates a bid from one of eNom's auction customers, eNom, using its proprietary technology, attempts to acquire that domain name from the domain name registry.  If eNom successfully acquires the domain name, the winning bidder is able to register the domain name through eNom's registrar services, by paying the domain name registration fee.  Occasionally a successful bidder will default on payment of the domain name registration fee, in which case eNom has the option under its Auction Agreement to assume ownership of the domain name.

8.      In its capacity as a registrar, eNom occasionally holds domain names that it has registered at the behest of third parties in its own account.  This may occur in a situation where one of eNom's auction customers submits a winning bid for a domain name, but then fails to pay the registration fee to eNom after eNom has acquired that domain name from the registry, as set forth in eNom's Auction Agreement.

9.      When domain names are added to eNom's account, eNom typically associates a web page with those domain names.  These web pages typically include a search function and links to advertisements found on other web pages.  The content of those web pages is generated for eNom by Yahoo! Inc. ("Yahoo!"), formerly known as Overture Services, Inc. ("Overture"), pursuant to a contractual agreement between eNom and Yahoo!  A true and correct copy of the contract between eNom and Overture, which was in effect in November 2005, is attached hereto as Exhibit D.

10.      eNom does not sell products through any of the websites for which Yahoo! provides content to eNom, and users who visit those websites cannot purchase any products from eNom.  If visitors to those websites click on advertising links that appear on those sites, they are directed to other websites operated by third parties, not eNom.

11.     It is my understanding that the domain names at issue in this litigation, <philbricksports.com> and <philbricksports.net>, were registered by eNom in November 2005 pursuant to auction requests submitted by one of eNom's customers, and that one of those domain names, <philbricksports.net>, was deleted by eNom the day after it was registered, while the other domain name, <philbricksports.com>, was placed into eNom's account.  These facts indicate to me that the customer who submitted the requests for those domain names to eNom failed to pay the registration fee after eNom had acquired those domain names from VeriSign.

I declare under penalty of perjury under the laws of the United States that the foregoing information is true and correct to the best of my knowledge, information and belief.

Dated: October 17, 2008                         /s/ Charles Ursini
                                                Charles Ursini

A

 # Internet Corporation for Assigned Names and Numbers

July 18, 2000

BY FEDERAL EXPRESS

eNom, Inc.
16770 NE 79th Street
Suite 205
Redmond, Washington 98052

Attention: Paul Stahura

Re: <u>Registrar Accreditation Agreement</u>

Dear Mr. Stahura:

     Thank you for signing and returning the renewed accreditation agreement so promptly. For your records, I enclose one fully signed agreement renewing the accreditation of eNom, Inc. as a registrar in the .com, .net, and .org TLDs for a period of five years.

Very truly yours,

Jennifer Tai
Assistant to Daniel E. Halloran
Registrar Liaison
halloran@icann.org

Enclosure

# REGISTRAR ACCREDITATION AGREEMENT

## Table of Contents

## I. DEFINITIONS

## II. TERMS AND CONDITIONS OF AGREEMENT

A.  Accreditation.
B.  Registrar Use of ICANN Name.
C.  General Obligations of ICANN.
D.  General Obligations of Registrar.
E.  Submission of SLD Holder Data to Registry.
F.  Public Access to Data on SLD Registrations.
G.  Retention of SLD Holder and Registration Data.
H.  Rights in Data.
I.  Data Escrow.
J.  Business Dealings, Including with SLD Holders.
K.  Domain-Name Dispute Resolution.
L.  Accreditation Fees.
M.  Specific Performance.
N.  Termination of Agreement.
O.  Term of Agreement; Renewal; Right to Substitute Updated Agreement.
P.  Resolution of Disputes Under This Agreement.
Q.  Limitations on Monetary Remedies for Violations of this Agreement.
R.  Handling by ICANN of Registrar-Supplied Data.
S.  Miscellaneous.

---

This REGISTRAR ACCREDITATION AGREEMENT ("Agreement") is by and between the Internet Corporation for Assigned Names and Numbers, a not-for-profit corporation, and eNom, Inc. ("Registrar"), a corporation, and shall be deemed made on June 25, 2000 at Los Angeles, California, USA.

## I. DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

A.  "Accredit" means to identify and set minimum standards for the performance of registration functions, to recognize persons or entities meeting those standards, and to enter into an accreditation agreement that sets forth the rules and procedures applicable to the provision of registration services.

B.  A "Consensus Policy" is one adopted by ICANN as follows:

1. "Consensus Policies" are those adopted based on a consensus among Internet stakeholders represented in the ICANN process, as demonstrated by (1) the adoption of the policy by the ICANN Board of Directors, (2) a recommendation that the policy should be adopted, by at least a two-thirds vote of the council of the ICANN Supporting Organization to which the matter is delegated, and (3) a written report and supporting materials (which must include all substantive submissions to the Supporting Organization relating to the proposal) that (i) documents the extent of agreement and disagreement among impacted groups, (ii) documents the outreach process used to seek to achieve adequate representation of the views of groups that are likely to be impacted, and (iii) documents the nature and intensity of reasoned support and opposition to the proposed policy.

2. In the event that Registrar disputes the presence of such a consensus, it shall seek review of that issue from an Independent Review Panel established under ICANN's bylaws. Such review must be sought within fifteen working days of publication of the Board's action adopting the policy. The decision of the panel shall be based on the report and supporting materials required by Section I.B.1 above. In the event that Registrar seeks review and the Panel sustains the Board's determination that the policy is based on a consensus among Internet stakeholders represented in the ICANN process, then Registrar must implement such policy unless it promptly seeks and obtains a stay or injunctive relief under Section II.P.

3. In the event, following a decision by the Independent Review Panel convened under Section I.B.2 above, that Registrar still disputes the presence of such a consensus, it may seek further review of that issue within fifteen working days of publication of the decision in accordance with the dispute-resolution procedures set forth in Section II.P below; provided, however, that Registrar must continue to implement the policy unless it has obtained a stay or injunctive relief under Section II.P or a final decision is rendered in accordance with the provisions of Section II.P that relieves Registrar of such obligation. The decision in any such further review shall be based on the report and supporting materials required by Section I.B.1 above.

4. A policy adopted by the ICANN Board of Directors on a temporary basis, without a prior recommendation by the council of an ICANN Supporting Organization, shall also be considered to be a Consensus Policy if adopted by the ICANN Board of Directors by a vote of at least two-thirds of its members, and if immediate temporary adoption of a policy on the subject is necessary to maintain the stability of the Internet or the operation of the domain name system, and if the proposed policy is as narrowly tailored as feasible to achieve those objectives. In adopting any policy under this provision, the ICANN Board of Directors shall state the period of time for which the policy is temporarily adopted and shall immediately refer the matter to the appropriate Supporting Organization for its evaluation and review with a detailed explanation of its reasons for adopting the temporary policy and why the Board believes the policy should receive the consensus support of Internet stakeholders. If the period of time for which the policy is adopted exceeds 45 days, the Board shall reaffirm its temporary adoption every 45 days

-2-

for a total period not to exceed 180 days, in order to maintain such policy in effect until such time as it meets the standard set forth in Section I.B.1. If the standard set forth in Section I.B.1 above is not met within the temporary period set by the Board, or the council of the Supporting Organization to which it has been referred votes to reject the temporary policy, it will no longer be a "Consensus Policy."

5. For all purposes under this Agreement, the policies specifically identified by ICANN on its website (www.icann.org/general/consensus-policies.htm) at the date of this Agreement as having been adopted by the ICANN Board of Directors before the date of this Agreement shall be treated in the same manner and have the same effect as "Consensus Policies" and accordingly shall not be subject to review under Section I.B.2.

6. In the event that, at the time the ICANN Board adopts a policy under Section I.B.1 during the term of this Agreement, ICANN does not have in place an Independent Review Panel established under ICANN's bylaws, the fifteen-working-day period allowed under Section I.B.2 to seek review shall be extended until fifteen working days after ICANN does have such an Independent Review Panel in place and Registrar shall not be obligated to comply with the policy in the interim.

C. "DNS" refers to the Internet domain-name system.

D. "ICANN" refers to the Internet Corporation for Assigned Names and Numbers, a party to this Agreement.

E. An "ICANN-adopted policy" (and references to ICANN "adopt[ing]" a policy or policies) refers to a Consensus Policy adopted by ICANN (i) in conformity with applicable provisions of its articles of incorporation and bylaws and Section II.C of this Agreement and (ii) of which Registrar has been given notice and a reasonable period in which to comply.

F. "IP" means Internet Protocol.

G. "Personal Data" refers to data about any identified or identifiable natural person.

H. The word "Registrar," when appearing with an initial capital letter, refers to eNom, Inc., a party to this Agreement.

I. The word "registrar," when appearing without an initial capital letter, refers to a person or entity that contracts with SLD holders and a registry, collecting registration data about the SLD holders and submitting zone file information for entry in the registry database.

J. A "Registry" is the person(s) or entity(ies) then responsible, in accordance with an agreement between ICANN and that person or entity (those persons or entities) or, if that agreement is terminated or expires, in accordance with an agreement between the US Government and that person or entity (those persons or entities), for providing registry services.

K. An "SLD" is a second-level domain of the DNS.

L. An SLD registration is "sponsored" by the registrar that placed the record associated with that registration into the registry. Sponsorship of a registration may be changed at the express direction of the SLD holder or, in the event a registrar loses accreditation, in accordance with then-current ICANN-adopted policies.

M. A "TLD" is a top-level domain of the DNS.

## II. TERMS AND CONDITIONS OF AGREEMENT

The parties agree as follows:

A. <u>Accreditation</u>. During the term of this Agreement, Registrar is hereby accredited by ICANN to act as a registrar (including to insert and renew registration of SLDs in the registry database) for the .com, .net, and .org TLDs.

B. <u>Registrar Use of ICANN Name</u>. Registrar is hereby granted a non-exclusive worldwide license to state during the term of this Agreement that it is accredited by ICANN as a registrar in the .com, .net, and .org TLDs. No other use of ICANN's name is licensed hereby. This license may not be assigned or sublicensed by Registrar.

C. <u>General Obligations of ICANN</u>. With respect to all matters that impact the rights, obligations, or role of Registrar, ICANN shall during the Term of this Agreement:

    1. exercise its responsibilities in an open and transparent manner;

    2. not unreasonably restrain competition and, to the extent feasible, promote and encourage robust competition;

    3. not apply standards, policies, procedures or practices arbitrarily, unjustifiably, or inequitably and not single out Registrar for disparate treatment unless justified by substantial and reasonable cause; and

    4. ensure, through its reconsideration and independent review policies, adequate appeal procedures for Registrar, to the extent it is adversely affected by ICANN standards, policies, procedures or practices.

D. <u>General Obligations of Registrar</u>.

    1. During the Term of this Agreement:

        a. Registrar agrees that it will operate as a registrar for TLDs for which it is accredited by ICANN in accordance with this Agreement;

-4-

b. Registrar shall comply, in such operations, with all ICANN-adopted Policies insofar as they:

      i. relate to one or more of the following: (A) issues for which uniform or coordinated resolution is reasonably necessary to facilitate interoperability, technical reliability and/or stable operation of the Internet or domain-name system, (B) registrar policies reasonably necessary to implement Consensus Policies relating to the Registry, or (C) resolution of disputes regarding the registration of domain names (as opposed to the use of such domain names), and

      ii. do not unreasonably restrain competition.

2. To the extent that Consensus Policies are adopted in conformance with Section II.C of this Agreement, the measures permissible under Section II.D.1.b.i shall include, without limitation:

      i. principles for allocation of SLD names (e.g., first-come/first-served, timely renewal, holding period after expiration);

      ii. prohibitions on warehousing of or speculation in domain names by registrars;

      iii. reservation of SLD names that may not be registered initially or that may not be renewed due to reasons reasonably related to (a) avoidance of confusion among or misleading of users, (b) intellectual property, or (c) the technical management of the DNS or the Internet (e.g., "example.com" and single-letter/digit names);

      iv. the allocation among continuing registrars of the SLD names sponsored in the registry by a registrar losing accreditation;

      v. the transfer of registration data upon a change in registrar sponsoring the registration; and

      vi. dispute resolution policies that take into account the use of a domain name.

Nothing in this Section II.D shall limit or otherwise affect Registrar's obligations as set forth elsewhere in this Agreement.

E. Submission of SLD Holder Data to Registry. During the term of this Agreement:

1. As part of its registration of SLDs in the .com, .net, and .org TLDs, Registrar shall submit to, or shall place in the registry database operated by Registry the following data elements concerning SLD registrations that Registrar processes:

      a. The name of the SLD being registered;

-5-

b. The IP addresses of the primary nameserver and secondary nameserver(s) for the SLD;

c. The corresponding names of those nameservers;

d. Unless automatically generated by the registry system, the identity of the registrar;

e. Unless automatically generated by the registry system, the expiration date of the registration; and

f. Other data required as a result of further development of the registry system by the Registry.

2. Within five (5) business days after receiving any updates from the SLD holder to the data elements listed in Sections II.E.1.b and c for any SLD registration Registrar sponsors, Registrar shall submit the updated data elements to, or shall place those elements in the registry database operated by Registry.

3. In order to allow reconstitution of the registry database in the event of an otherwise unrecoverable technical failure or a change in the designated Registry permitted by the contract Registry has with ICANN and/or the United States Department of Commerce, within ten days of any such request by ICANN Registrar shall submit an electronic database containing the data elements listed in Sections II.F.1.a through d for all active records in the registry sponsored by Registrar, in a format specified by ICANN, to the Registry for the appropriate TLD.

F. Public Access to Data on SLD Registrations. During the term of this Agreement:

1. At its expense, Registrar shall provide an interactive web page and a port 43 Whois service providing free public query-based access to up-to-date (i.e. updated at least daily) data concerning all active SLD registrations sponsored by Registrar in the registry for the .com, .net, and .org TLDs. The data accessible shall consist of elements that are designated from time to time according to an ICANN-adopted policy. Until ICANN otherwise specifies by means of an ICANN-adopted policy, this data shall consist of the following elements as contained in Registrar's database:

a. The name of the SLD being registered and the TLD for which registration is being requested;

b. The IP addresses of the primary nameserver and secondary nameserver(s) for the SLD;

c. The corresponding names of those nameservers;

    d. The identity of Registrar (which may be provided through Registrar's website);

    e. The original creation date of the registration;

    f. The expiration date of the registration;

    g. The name and postal address of the SLD holder;

    h. The name, postal address, e-mail address, voice telephone number, and (where available) fax number of the technical contact for the SLD; and

    i. The name, postal address, e-mail address, voice telephone number, and (where available) fax number of the administrative contact for the SLD.

2. Upon receiving any updates to the data elements listed in Sections II.F.1.b through d and f through i from the SLD holder, Registrar shall promptly update its database used to provide the public access described in Section II.F.1.

3. Registrar may subcontract its obligation to provide the public access described in Section II.F.1 and the updating described in Section II.F.2, provided that Registrar shall remain fully responsible for the proper provision of the access and updating.

4. Registrar shall abide by any ICANN-adopted Policy that requires registrars to cooperatively implement a distributed capability that provides query-based Whois search functionality across all registrars. If the Whois service implemented by registrars does not in a reasonable time provide reasonably robust, reliable, and convenient access to accurate and up-to-date data, the Registrar shall abide by any ICANN-adopted Policy requiring Registrar, if reasonably determined by ICANN to be necessary (considering such possibilities as remedial action by specific registrars), to supply data from Registrar's database to facilitate the development of a centralized Whois database for the purpose of providing comprehensive Registrar Whois search capability.

5. In providing query-based public access to registration data as required by Sections II.F.1 and II.F.4, Registrar shall not impose terms and conditions on use of the data provided except as permitted by an ICANN-adopted policy. Unless and until ICANN adopts a different policy, Registrar shall permit use of data it provides in response to queries for any lawful purposes except to: (a) allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via e-mail (spam); or (b) enable high volume, automated, electronic processes that apply to Registrar (or its systems).

6. In addition, Registrar shall provide third-party bulk access to the data subject to public access under Section II.F.1 under the following terms and conditions:

a. Registrar shall make a complete electronic copy of the data available at least one time per week for download by third parties who have entered into a bulk access agreement with Registrar.

b. Registrar may charge an annual fee, not to exceed US$10,000, for such bulk access to the data.

c. Registrar's access agreement shall require the third party to agree not to use the data to allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via e-mail (spam).

d. Registrar's access agreement may require the third party to agree not to use the data to enable high-volume, automated, electronic processes that apply to Registrar (or its systems).

e. Registrar's access agreement may require the third party to agree not to sell or redistribute the data except insofar as it has been incorporated by the third party into a value-added product or service that does not permit the extraction of a substantial portion of the bulk data from the value-added product or service for use by other parties.

f. Registrar may enable SLD holders who are individuals to elect not to have Personal Data concerning their registrations available for bulk access for marketing purposes based on Registrar's "Opt-Out" policy, and if Registrar has such a policy Registrar shall require the third party to abide by the terms of that Opt-Out policy; provided, however, that Registrar may not use such data subject to opt-out for marketing purposes in its own value-added product or service.

7. Registrar's obligations under Section II.F.6 shall remain in effect until the earlier of (a) replacement of this policy with a different ICANN-adopted policy governing bulk access to the data subject to public access under Section II.F.1, or (b) demonstration, to the satisfaction of the United States Department of Commerce, that no individual or entity is able to exercise market power with respect to registrations or with respect to registration data used for development of value-added products and services by third parties.

8. To comply with applicable statutes and regulations and for other reasons, ICANN may from time to time adopt policies establishing limits on the Personal Data concerning SLD registrations that Registrar may make available to the public through a public-access service described in this Section II.F and on the manner in which Registrar may make them available. In the event ICANN adopts any such policy, Registrar shall abide by it.

-8-

G. Retention of SLD Holder and Registration Data.

1. During the term of this Agreement, Registrar shall maintain its own electronic database, as updated from time to time, containing data for each active SLD registration sponsored by it in the registry for the .com, .net, and .org TLDs. The data for each such registration shall include the elements listed in Sections II.F.1.a through i, as well as the name and (where available) postal address, e-mail address, voice telephone number, and fax number of the billing contact.

2. During the term of this Agreement and for three years thereafter, Registrar (itself or by its agent) shall maintain the following records relating to its dealings with the Registry and SLD holders:

a. In electronic form, the submission date and time, and the content, of all registration data (including updates) submitted in electronic form to the Registry;

b. In electronic, paper, or microfilm form, all written communications constituting registration applications, confirmations, modifications, or terminations and related correspondence with actual SLD holders, including registration contracts; and

c. In electronic form, records of the accounts of all SLD holders with Registrar, including dates and amounts of all payments and refunds.

Registrar shall make these records available for inspection by ICANN upon reasonable notice. ICANN shall not disclose such records except as expressly permitted by an ICANN-adopted policy.

H. Rights in Data. Registrar disclaims all rights to exclusive ownership or use of the data elements listed in Sections II.E.1.a through c for all SLD registrations submitted by Registrar to, or sponsored by Registrar in, the registry database for the .com, .net, and .org TLDs. Registrar does not disclaim rights in the data elements listed in Sections II.E.1.d through f and II.F.1.d through i concerning active SLD registrations sponsored by it in the registry for the .com, .net, and .org TLDs, and agrees to grant non-exclusive, irrevocable, royalty-free licenses to make use of and disclose the data elements listed in Sections II.F.1.d through i for the purpose of providing a service (such as a Whois service under Section II.F.4) providing interactive, query-based public access. Upon a change in sponsorship from Registrar of any SLD registration in the registry for the .com, .net, and .org TLDs, Registrar acknowledges that the registrar gaining sponsorship shall have the rights of an owner to the data elements listed in Sections II.E.1.d and e and II.F.1.d through i concerning that registration, with Registrar also retaining the rights of an owner in that data. Nothing in this Section II.H prohibits Registrar from (1) restricting bulk public access to data elements in a manner consistent with any ICANN-adopted policies or (2) transferring rights it claims in data elements subject to the provisions of this Section II.H.

-9-

I. <u>Data Escrow</u>. During the term of this Agreement, on a schedule, under the terms, and in the format specified in the then-current ICANN-adopted policy on registrar escrow requirements, Registrar shall submit an electronic copy of the database described in Section II.G.1 to ICANN or, at Registrar's election and at its expense, to a reputable escrow agent mutually approved by Registrar and ICANN, such approval also not to be unreasonably withheld by either party. The data shall be held under an agreement among Registrar, ICANN, and the escrow agent (if any) providing that (1) the data shall be received and held in escrow, with no use other than verification that the deposited data is complete and in proper format, until released to ICANN; (2) the data shall be released from escrow upon expiration without renewal or termination of this Agreement; and (3) ICANN's rights under the escrow agreement shall be assigned with any assignment of this Agreement. The escrow shall provide that in the event the escrow is released under this Section II.I, ICANN (or its assignee) shall have a non-exclusive, irrevocable, royalty-free license to exercise (only for transitional purposes) or have exercised all rights necessary to provide registrar services.

J. <u>Business Dealings, Including with SLD Holders</u>.

1. In the event ICANN adopts a policy supported by a consensus of ICANN-accredited registrars establishing or approving a Code of Conduct for such registrars, Registrar shall abide by that Code.

2. Registrar shall abide by applicable laws and governmental regulations.

3. Registrar shall not represent to any actual or potential SLD holder that Registrar enjoys access to a registry for which Registrar is accredited that is superior to that of any other registrar accredited for that registry.

4. Registrar shall not activate any SLD registration unless and until it is satisfied that it has received a reasonable assurance of payment of its registration fee. For this purpose, a charge to a credit card, general commercial terms extended to creditworthy customers, or other mechanism providing a similar level of assurance of payment shall be sufficient, provided that the obligation to pay becomes final and non-revocable by the SLD holder upon activation of the registration.

5. Registrar shall register SLDs to SLD holders only for fixed periods. At the conclusion of the registration period, failure by or on behalf of the SLD holder to pay a renewal fee within the time specified in a second notice or reminder shall, in the absence of extenuating circumstances, result in cancellation of the registration. In the event that ICANN adopts a policy concerning procedures for handling expiration of registrations, Registrar shall abide by that policy.

6. Registrar shall not insert or renew any SLD name in any registry for which Registrar is accredited by ICANN in a manner contrary to an ICANN-adopted policy stating a list or specification of excluded SLD names that is in effect at the time of insertion or renewal.

7. Registrar shall require all SLD holders to enter into an electronic or paper registration agreement with Registrar including at least the following provisions:

    a. The SLD holder shall provide to Registrar accurate and reliable contact details and promptly correct and update them during the term of the SLD registration, including: the full name, postal address, e-mail address, voice telephone number, and fax number if available of the SLD holder; name of authorized person for contact purposes in the case of an SLD holder that is an organization, association, or corporation; and the data elements listed in Section II.F.1.b, c, and h through i above.

    An SLD holder's willful provision of inaccurate or unreliable information, its willful failure to update information promptly provided to Registrar, or its failure to respond for over fifteen calendar days to inquiries by Registrar concerning the accuracy of contact details associated with the SLD holder's registration shall constitute a material breach of the SLD holder-registrar contract and be a basis for cancellation of the SLD registration.

    Any SLD holder that intends to license use of a domain name to a third party is nonetheless the SLD holder of record and is responsible for providing its own full contact information and for providing and updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the SLD. An SLD holder licensing use of an SLD according to this provision shall accept liability for harm caused by wrongful use of the SLD, unless it promptly discloses the identity of the licensee to a party providing the SLD holder reasonable evidence of actionable harm.

    b. Registrar shall provide notice to each new or renewed SLD holder stating:

        i. The purposes for which any Personal Data collected from the applicant are intended;

        ii. The intended recipients or categories of recipients of the data (including the Registry and others who will receive the data from Registry);

        iii. Which data are obligatory and which data, if any, are voluntary; and

        iv. How the SLD holder or data subject can access and, if necessary, rectify the data held about them.

    c. The SLD holder shall consent to the data processing referred to in Section II.J.7.b.

-11-

d. The SLD holder shall represent that notice has been provided equivalent to that described in Section II.J.7.b. above to any third-party individuals whose Personal Data are supplied to Registrar by the SLD holder, and that the SLD holder has obtained consent equivalent to that referred to in Section II.J.7.c of any such third-party individuals.

e. Registrar shall agree that it will not process the Personal Data collected from the SLD holder in a way incompatible with the purposes and other limitations about which it has provided notice to the SLD holder in accordance with Section II.J.7.b, above.

f. Registrar shall agree that it will take reasonable precautions to protect Personal Data from loss, misuse, unauthorized access or disclosure, alteration, or destruction.

g. The SLD holder shall represent that, to the best of the SLD holder's knowledge and belief, neither the registration of the SLD name nor the manner in which it is directly or indirectly used infringes the legal rights of a third party.

h. For the adjudication of disputes concerning or arising from use of the SLD name, the SLD holder shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (1) of the SLD holder's domicile and (2) where Registrar is located.

i. The SLD holder shall agree that its registration of the SLD name shall be subject to suspension, cancellation, or transfer pursuant to any ICANN-adopted policy, or pursuant to any registrar or registry procedure not inconsistent with an ICANN-adopted policy, (1) to correct mistakes by Registrar or the Registry in registering the name or (2) for the resolution of disputes concerning the SLD name.

j. The SLD holder shall indemnify and hold harmless the Registry and its directors, officers, employees, and agents from and against any and all claims, damages, liabilities, costs, and expenses (including reasonable legal fees and expenses) arising out of or related to the SLD holder's domain name registration.

8. Registrar shall abide by any ICANN-adopted policies requiring reasonable and commercially practicable (a) verification, at the time of registration, of contact information associated with an SLD registration sponsored by Registrar or (b) periodic re-verification of such information. Registrar shall, upon notification by any person of an inaccuracy in the contact information associated with an SLD registration sponsored by Registrar, take reasonable steps to investigate that claimed inaccuracy. In the event Registrar learns of inaccurate contact information associated with an SLD registration it sponsors, it shall take reasonable steps to correct that inaccuracy.

9. Registrar shall abide by any ICANN-adopted policy prohibiting or restricting warehousing of or speculation in domain names by registrars.

10. Registrar shall maintain in force commercial general liability insurance with policy limits of at least US$500,000 covering liabilities arising from Registrar's registrar business during the term of this Agreement.

11. Nothing in this Agreement prescribes or limits the amount Registrar may charge SLD holders for registration of SLD names.

K. Domain-Name Dispute Resolution. During the term of this Agreement, Registrar shall have in place a policy and procedure for resolution of disputes concerning SLD names. In the event that ICANN adopts a policy or procedure for resolution of disputes concerning SLD names that by its terms applies to Registrar, Registrar shall adhere to the policy or procedure.

L. Accreditation Fees. As a condition of accreditation, Registrar shall pay accreditation fees to ICANN. These fees consist of yearly and on-going components.

1. The yearly component for the term of this Agreement shall be US $5,000. Payment of the yearly component shall be due upon execution by Registrar of this Agreement and upon each anniversary date after such execution during the term of this Agreement (other than the expiration date).

2. Registrar shall pay the on-going component of Registrar accreditation fees adopted by ICANN in accordance with the provisions of Section II.C above, provided such fees are reasonably allocated among all registrars that contract with ICANN and that any such fees must be expressly approved by registrars accounting, in aggregate, for payment of two-thirds of all registrar-level fees. Registrar shall pay such fees in a timely manner for so long as all material terms of this Agreement remain in full force and effect, and notwithstanding the pendency of any dispute between Registrar and ICANN.

3. On reasonable notice given by ICANN to Registrar, accountings submitted by Registrar shall be subject to verification by an audit of Registrar's books and records by an independent third-party that shall preserve the confidentiality of such books and records (other than its findings as to the accuracy of, and any necessary corrections to, the accountings).

M. Specific Performance. While this Agreement is in effect, either party may seek specific performance of any provision of this Agreement in the manner provided in Section II.P below, provided the party seeking such performance is not in material breach of its obligations.

N. Termination of Agreement. This Agreement may be terminated before its expiration by Registrar by giving ICANN thirty days written notice. It may be terminated before its expiration by ICANN in any of the following circumstances:

1. There was a material misrepresentation, material inaccuracy, or materially misleading statement in Registrar's application for accreditation or any material accompanying the application.

2. Registrar:

> a. is convicted of a felony or other serious offense related to financial activities, or is judged by a court to have committed fraud or breach of fiduciary duty, or is the subject of a judicial determination that ICANN reasonably deems as the substantive equivalent of any of these; or

> b. is disciplined by the government of its domicile for conduct involving dishonesty or misuse of funds of others.

3. Any officer or director of Registrar is convicted of a felony or of a misdemeanor related to financial activities, or is judged by a court to have committed fraud or breach of fiduciary duty, or is the subject of a judicial determination that ICANN deems as the substantive equivalent of any of these; provided, such officer or director is not removed in such circumstances.

4. Registrar fails to cure any breach of this Agreement (other than a failure to comply with a policy adopted by ICANN during the term of this Agreement as to which Registrar is seeking, or still has time to seek, review under Section I.B.2 of whether a consensus is present) within fifteen working days after ICANN gives Registrar notice of the breach.

5. Registrar fails to comply with a ruling granting specific performance under Sections II.M and II.P.

6. Registrar continues acting in a manner that ICANN has reasonably determined endangers the stability or operational integrity of the Internet after receiving three days notice of that determination.

7. Registrar becomes bankrupt or insolvent.

This Agreement may be terminated in circumstances 1 through 6 above only upon fifteen days written notice to Registrar (in the case of circumstance 4 occurring after Registrar's failure to cure), with Registrar being given an opportunity during that time to initiate arbitration under Section II.P to determine the appropriateness of termination under this Agreement. In the event Registrar initiates litigation or arbitration concerning the appropriateness of termination by ICANN, the termination shall be stayed an additional thirty days to allow Registrar to obtain a stay of termination under Section II.P below. If Registrar acts in a manner that ICANN reasonably determines endangers the stability or operational integrity of the Internet and upon notice does not immediately cure, ICANN may suspend this Agreement for five working days pending ICANN's application for more extended specific performance or injunctive relief under

Section II.P. This Agreement may be terminated immediately upon notice to Registrar in circumstance 7 above.

O.  Term of Agreement; Renewal; Right to Substitute Updated Agreement. This Agreement shall have a term of five (5) years until June 24, 2005, unless sooner terminated. Thereafter, if Registrar seeks to continue its accreditation, it may apply for renewed accreditation, and shall be entitled to renewal provided it meets the ICANN-adopted policy on accreditation criteria then in effect, is in compliance with its obligations under this Agreement, as amended, and agrees to be bound by the then-current Registrar accreditation agreement (which may differ from those of this Agreement) that ICANN adopts in accordance with Sections II.C and II.D (as Section II.D may have been amended by an ICANN-adopted policy). In connection with renewed accreditation, Registrar shall confirm its assent to the terms and conditions of the such then-current Registrar accreditation agreement by signing that accreditation agreement. In the event that, during the term of this Agreement, ICANN posts on its web site an updated form of registrar accreditation agreement applicable to accredited registrars in the .com, .net, or .org TLDs, Registrar (provided it has not received (1) a notice of breach that it has not cured or (2) a notice of termination of this Agreement under Section II.N above) may elect, by giving ICANN written notice, to enter an agreement in the updated form in place of this Agreement. In the event of such election, Registrar and ICANN shall promptly sign a new accreditation agreement that contains the provisions of the updated form posted on the web site, with the length of the term of the substituted agreement as stated in the updated form posted on the web site, calculated as if it commenced on the date this Agreement was made, and this Agreement will be deemed terminated.

P.  Resolution of Disputes Under this Agreement. Disputes arising under or in connection with this Agreement, including (1) disputes arising from ICANN's failure to renew Registrar's accreditation and (2) requests for specific performance, shall be resolved in a court of competent jurisdiction or, at the election of either party, by an arbitration conducted as provided in this Section II.P pursuant to the International Arbitration Rules of the American Arbitration Association ("AAA"). The arbitration shall be conducted in English and shall occur in Los Angeles County, California, USA. There shall be three arbitrators: each party shall choose one arbitrator and, if those two arbitrators do not agree on a third arbitrator, the third shall be chosen by the AAA. The parties shall bear the costs of the arbitration in equal shares, subject to the right of the arbitrators to reallocate the costs in their award as provided in the AAA rules. The parties shall bear their own attorneys' fees in connection with the arbitration, and the arbitrators may not reallocate the attorneys' fees in conjunction with their award. The arbitrators shall render their decision within ninety days of the conclusion of the arbitration hearing. In the event Registrar initiates arbitration to contest the appropriateness of termination of this Agreement by ICANN, Registrar may at the same time request that the arbitration panel stay the termination until the arbitration decision is rendered, and that request shall have the effect of staying the termination until the arbitration panel has granted an ICANN request for specific performance and Registrar has failed to comply with such ruling. In the event Registrar initiates arbitration to contest an Independent Review Panel's decision under Section I.B.2 sustaining the Board's determination that a policy is supported by consensus, Registrar may at the same time request that the arbitration panel stay the requirement that it comply with the policy until the arbitration decision is

-15-

rendered, and that request shall have the effect of staying the requirement until the decision or until the arbitration panel has granted an ICANN request for lifting of the stay. In all litigation involving ICANN concerning this Agreement (whether in a case where arbitration has not been elected or to enforce an arbitration award), jurisdiction and exclusive venue for such litigation shall be in a court located in Los Angeles, California, USA; however, the parties shall also have the right to enforce a judgment of such a court in any court of competent jurisdiction. For the purpose of aiding the arbitration and/or preserving the rights of the parties during the pendency of an arbitration, the parties shall have the right to seek temporary or preliminary injunctive relief from the arbitration panel or in a court located in Los Angeles, California, USA, which shall not be a waiver of this arbitration agreement.

Q. <u>Limitations on Monetary Remedies for Violations of this Agreement</u>. ICANN's aggregate monetary liability for violations of this Agreement shall not exceed the amount of accreditation fees paid by Registrar to ICANN under Section II.L of this Agreement. Registrar's monetary liability to ICANN for violations of this Agreement shall be limited to accreditation fees owing to ICANN under this Agreement. In no event shall either party be liable for special, indirect, incidental, punitive, exemplary, or consequential damages for any violation of this Agreement.

R. <u>Handling by ICANN of Registrar-Supplied Data</u>. Before receiving any Personal Data from Registrar, ICANN shall specify to Registrar in writing the purposes for and conditions under which ICANN intends to use the Personal Data. ICANN may from time to time provide Registrar with a revised specification of such purposes and conditions, which specification shall become effective no fewer than thirty days after it is provided to Registrar. ICANN shall not use Personal Data provided by Registrar for a purpose or under conditions inconsistent with the specification in effect when the Personal Data were provided. ICANN shall take reasonable steps to avoid uses of the Personal Data by third parties inconsistent with the specification.

S. <u>Miscellaneous</u>.

    1. <u>Assignment</u>. Either party may assign or transfer this Agreement only with the prior written consent of the other party, which shall not be unreasonably withheld, except that ICANN may, with the written approval of the United States Department of Commerce, assign this agreement by giving Registrar written notice of the assignment. In the event of assignment by ICANN, the assignee may, with the approval of the United States Department of Commerce, revise the definition of "Consensus Policy" to the extent necessary to meet the organizational circumstances of the assignee, provided the revised definition requires that Consensus Policies be based on a demonstrated consensus of Internet stakeholders.

    2. <u>No Third-Party Beneficiaries</u>. This Agreement shall not be construed to create any obligation by either ICANN or Registrar to any non-party to this Agreement, including any SLD holder.

    3. <u>Notices, Designations, and Specifications</u>. All notices to be given under this Agreement shall be given in writing at the address of the appropriate party as set forth

-16-

below, unless that party has given a notice of change of address in writing. Any notice required by this Agreement shall be deemed to have been properly given when delivered in person, when sent by electronic facsimile, or when scheduled for delivery by internationally recognized courier service. Designations and specifications by ICANN under this Agreement shall be effective when written notice of them is deemed given to Registrar.

If to ICANN, addressed to:

Internet Corporation for Assigned Names and Numbers
Registrar Accreditation
4676 Admiralty Way, Suite 330
Marina Del Rey, California 90292
Telephone: 1/310/823-9358
Facsimile: 1/310/823-8649

If to Registrar, addressed to:

eNom, Inc.
16770 NE 79th Street
Suite 205
Redmond, Washington  98052
Attention:  Paul Stahura
Telephone Number:  +1/425/883-8860 x205; +1/425/376-0505 x207
Facsimile Number:  +1/425/376-0888
E-mail Address:  paul.stahura@enom.com

4. Dates and Times.  All dates and times relevant to this Agreement or its performance shall be computed based on the date and time observed in Los Angeles, California, USA.

5. Language.  All notices, designations, and specifications made under this Agreement shall be in the English language.

6. Entire Agreement.  Except for any written transition agreement that may be executed concurrently herewith by both parties, this Agreement constitutes the entire agreement of the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties.

7. Amendments and Waivers.  No amendment, supplement, or modification of this Agreement or any provision hereof shall be binding unless executed in writing by both parties. No waiver of any provision of this Agreement shall be binding unless evidenced by a writing signed by the party waiving compliance with such provision. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of

-17-

any other provision hereof, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided.

8. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate by their duly authorized representatives.

INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS

By: _____

Michael M. Roberts
President and CEO

eNOM, INC.

By: _____

CEO
eNom, Inc

-18-

B

**Total Domain Names on the eNom Platform: 11,441,908**                                    **Apply for a reseller account |ȴ log-in**

**whois | help**

‹ ƛ ⌐ ⌐ ⌐ ⌐ ⌐    ·ǣ Ⓡ⌐⌐⌐⌐ƛ the domain name experts

> TERMS AND CONDITIONS > **registration agreement**

# eNom Registration Agreement

This Registration Agreement ("Agreement") sets forth the terms and conditions of your use of domain name registration and related services ("Services"). In this Agreement "you" and "your" refer to you and the registrant listed in the WHOIS contact information for the domain name. "We", "us" and "our" refer to the registrars listed at the bottom of this document, any one of which will be the registrar for your domain name and all of which share common ownership, common terms and conditions, and a shared Services infrastructure. To determine which registrar your domain name is registered with, perform a WHOIS lookup at http://www.uwhois.com. You obtain the Services first through a Primary Service Provider, eNom, Inc., with whom we have a wholesale relationship. Your relationship with your Primary Service Provider may be governed by additional terms, as you and your Primary Service Provider may agree. "We," "us" and "our" does not include your Primary Service Provider, except when specifically mentioned or unless your Primary Service Provider is one of us (i.e. if your Primary Service Provider is also one of the registrars listed at the bottom of this document).

YOU AGREE TO THIS AGREEMENT: By using the Service(s), you agree to all terms and conditions of this Agreement, the UDRP (defined below) and the rules, policies, or agreements published in association with specific of the Service(s) and/or which may be enforced by ICANN, the registries, and governments.

PASSAGE OF TIME: This Agreement will change over time. If, as a result of such a change, you no longer agree with the terms of this Agreement, you agree that your exclusive remedy is to transfer your domain name registration services to another registrar or request of us that we cancel your domain name registration services. If you continue to use the Services following a change in this Agreement and/or the Services, your continued use of the Services indicates your consent to the changes. Any such revision or change will be binding and effective within 30 days of when the revised Agreement or change to the Service(s) is posted to the website of either the Primary or Backend Service Providers, or 15 days after you view the revised Agreement or 15 days after notification is sent to the e-mail address provided in association with your domain name registration. You agree to review this Agreement periodically to make yourself aware of any such revisions.

YOUR ACCOUNT: You must create an account to use the Services. Your account is typically going to be managed and/or provided by your Primary Service Provider. You are responsible for maintaining and updating all login IDs, passwords, and for all access to and use of your account by you or any third party.

SERVICE(S) PROVIDED AT WILL AND TERMINATION OF SERVICE(S): We and your Primary Service Provider may reject your domain name registration application or elect to discontinue providing Service(s) to you for any reason within 30 days of a Service initiation or a Service renewal. Outside of this period, we and your Primary Service Provider may terminate or suspend the Service(s) at any time for cause, which, without limitation, includes registration of prohibited domain name(s), abuse of the Services, payment irregularities, serious allegations of illegal conduct, or if your use of the Services involves us in a violation of any Internet Service Provider's ("ISP's") acceptable use policies, including the transmission of unsolicited bulk email. You agree that if we terminate or suspend the Services provided to you under this Agreement, that we may then, at our option, make either ourselves or a third party the beneficiary of Services which are substantially similar to those which were previously providing to you and that any reference in this Agreement to termination or suspension of the Services to you includes this option. If we have grounds to terminate or suspend Service(s) with respect to one domain name or in relation to other Service(s) provided through your account, we may terminate or suspend all Service(s) provided through your account, including Service(s) to other domain names. No fee refund will be made when there is a suspension or termination of Service(s) for cause. At any time and for any reason, we may terminate the Services 30 days after we send notice of termination via mail or email, at our option, to the WHOIS contact information provided in association with your domain name registration. Following notice of termination other than for cause, you must transfer your domain name or risk that we may delete your domain name or suspend or modify Services to it. If we terminate Services for a reason other than cause, we will attempt to refund your fees. You further acknowledge and agree that your registration of a domain name is subject to suspension, cancellation or transfer by any ICANN procedure, by any registrar or registry administrator procedures approved by an ICANN-adopted policy, to correct mistakes by us, another registrar or the registry administrator in administering the domain name or for the resolution of disputes concerning the domain name.

OUR SERVICES: We are accredited registrars with the Internet Corporation for Assigned Names and Numbers ("ICANN") for Top Level Domain Names ("TLDs") (such as .com, .net, .org, .de, co.uk, etc.). ICANN oversees registrations and other aspects of the TLDs. Domain name registrations are not effective until the registry administrator puts them into effect. For a list of registry administrators and for more information on TLDs, see HYPERLINK http://www.icann.org/tlds/. Domain name registrations are only for limited terms, terms which end on the expiration date. For domain names which are created as a new registration out of the available namespace, the term begins on the date the domain name registration is acknowledged by the applicable registry; for domain names registrations which were not returned to the available namespace, the term begins on the date the previous registrant's domain name registration was acknowledged by the applicable registry. You agree that we and your Primary Service Provider are not liable or responsible in any way for any errors, omissions or any other actions by the registry administrator arising out of or related to a request to register, renew, modify the settings for, or transfer of a domain name registration (our limitation of liability is explained further, below). You further agree that domain name registration is a service, that domain name registrations do not exist independently from services provided pursuant to this or a similar registration agreement with a registrar, and that domain name registration services do not create a property interest.

YOU WARRANT THAT YOUR USE OF OUR SERVICES IS NOT GOING TO SUBJECT US TO ANY CLAIM(S). You further agree to

eNom 000045

indemnify, defend and hold harmless us, your Primary Service Provider, and applicable registry administrator(s) (including Verisign Inc., Neulevel, Inc., Public Interest Registry, Afilias Limited, and other registry operators listed at http://www.icann.org/registries/listing.html) and all such parties' directors, officers, employees, and agents from and against any and all claims, damages, liabilities, costs, and expenses (including any direct, indirect, incidental, special or consequential damages and reasonable legal fees and expenses) arising out of, or related to, the domain name registration services you are obtaining from us.

NOT INCLUDED IN THE SERVICES: Without limitation, the following are not included in the Services: We cannot and do not check to see whether the domain name(s) you select, or the use you make of the domain name(s), or other of the Service(s), infringes legal rights of others. It is your responsibility to know whether or not the domain name(s) you select or use infringes legal rights of others. We might be ordered by a court to cancel, modify, or transfer your domain name; it is your responsibility to list accurate contact information in association with your account and to communicate with litigants, potential litigants, and governmental authorities. It is not our responsibility to forward court orders or other communications to you. We will comply with court orders unless you contact us to contest the order.

IF LAWSUIT(S) ARE THREATENED: If we are sued or threatened with lawsuit in connection with Service(s) provided to you, we may turn to you to indemnify us and to hold us harmless from the claims and expenses (including attorney's fees and court costs). Under such circumstances, you agree that you will, upon demand, obtain a performance bond with a reputable bonding company or, if you are unable to obtain a performance bond, that you will deposit money with us to pay for our reasonably anticipated expenses in relation to the matter for the coming year. Such deposit will be drawn down as expenses are incurred, with all account notices sent to the WHOIS contact information provided in association with your domain names and/or account. We shall not be obliged to extend you any credit in relation to such expenses and we may terminate the Services for a failure to make or renew such a deposit. We will return any unused deposit upon the later of one year from deposit or the conclusion of the matter.

DISPUTE RESOLUTION POLICY: You agree to the Uniform Domain Name Dispute Resolution Policy ("UDRP"), which is available at http://www.icann.org/udrp/udrp-rules-24oct99.htm and http://www.icann.org/dndr/udrp/policy.htm . You agree that the UDRP may be changed by ICANN (or ICANN's successor) at any time. You agree that, if the registration or reservation of your domain name is challenged by a third party, you will be subject to the provisions specified in the Dispute Policy in effect at the time your domain name registration is disputed by the third party. You also agree that, in the event a domain name dispute arises with any third party, you will indemnify and hold us harmless pursuant to the terms and conditions of the UDRP. You also understand that it is important for you to regularly monitor email sent to the email address associated with your account and domain names because, among other reasons, if a dispute arises regarding Services provided to you, you may lose your rights to receive the Services if you do not respond expeditiously to an email sent in conjunction therewith.

FEES: As consideration for the Service(s), renewal of the Service(s), and, if you select it, automatic renewal of the Service(s), you agree to pay, prior to the effectiveness of the desired Service(s), the applicable Service(s) fees. All fees are non-refundable, in whole or in part, even if your domain name registration is suspended, cancelled or transferred prior to the end of your then current registration term, unless this Agreement specifically provides for a refund. At our option, we may require that you pay fees through a particular payment means (such as by credit card or by wire transfer) or that you change from one payment provider to another.

CREDIT CARD AND OTHER CHARGES: If you have an issue with credit card charges, you should contact your Primary Service Provider (if any), first, and us, secondarily, regarding the issue before you contact your credit card company to request a charge back or reversal of the charges. In the event of a charge back by a credit card company (or similar action by another payment provider allowed by us) in connection with your payment of fees for any Service(s), you agree that we and/or your Primary Service Provider may suspend access to any and all accounts you have with us and/or your Primary Service Provider and that all rights to and interest in and use of any domain name registration(s) services, website hosting, and/or email services, including all data hosted on our systems and/or on the systems of your Primary Service Provider shall be assumed by us or your Primary Service Provider, as the case may be. We will reinstate your rights to and control over these Services solely at our discretion, and subject to our receipt of the unpaid fee(s) and our then-current reinstatement fee, currently set at $200(US Dollars). Reinstatement of Service(s) by your Primary Service Provider may be according to the terms, if any, between you and your Primary Service Provider relating to reinstatement. Charges for the Service(s) which use our credit card payment processor will be identified on your credit card statement as "Domain Name Registration." We are not responsible for how charges appear on your credit card statement when the transaction is processed by your Primary Service Provider's or another third party's credit card payment processor.

EXPIRATION AND RENEWAL OF SERVICE(S): You acknowledge that it is your responsibility to keep your own records and to maintain your own reminders regarding when your domain name registration or other Services are set to expire. As a convenience to you, and not as a binding commitment, we and/or your Primary Service Provider may notify you via an email message or via your account when renewal fees are due. Should these fees go unpaid, your Services will expire or be cancelled. Payment must be made by credit card or such other method as we may allow or require from time to time. If you select automatic renewal of the Service(s), we may attempt to renew the Service(s) a reasonable time before expiration, provided your credit card or other billing information is available and up to date. You acknowledge that it is your responsibility to keep your billing information up to date and that we are not required to, but that we may, contact you to update this information in the event that an attempted transaction is not processed successfully. *please note: for certain TLDs, the automatic renewal option is not available

ACCOUNT CONTACT INFORMATION AND DOMAIN NAME WHOIS INFORMATION: As further consideration for the Service(s), you agree to provide certain current, complete and accurate information about you, both with respect to your account information and with respect to the WHOIS information for your domain name(s). You agree to maintain and update this information as needed to keep it current, complete and accurate. With respect to you, the administrative, technical, and billing contacts for your domain name registration(s) and other Service(s), you must submit the following: name, postal address, e-mail address, voice telephone number, and where available, fax number. You agree that the type of information you are required to provide may change and you understand that, if you do not provide the newly required information, your registration or and/or other Service(s) may be suspended or terminated or may not be renewed. Not providing requested information may prevent you from obtaining all Service (s). You may provide information regarding the name-servers assigned to your domain name(s) and, if we are providing name-

Case 1:07-cv-00215-JL   Document 50-1   Filed 10/17/08   Page 29 of 33

server services to you, the DNS settings for the domain name. If you do not provide complete name-server information, or if you purchase "Name Only" Services, you agree that we may supply this information (and point your domain name to a website of our choosing) until such time as you elect to supply the name-server information or until such time as you elect to upgrade from "Name Only" Services.

YOUR OBLIGATIONS AND REPRESENTATIONS RELATING TO THE ACCOUNT AND WHOIS CONTACT INFORMATION: In the event that, in registering a domain name or obtaining other Service(s), you provide information about or on behalf of a third party, you represent that you have (a) provided notice to that third party of the disclosure and use of that party's information as set forth in this Agreement, and (b) that you have obtained the third party's express consent to the disclosure and use of that party's information as set forth in this Agreement. By registering a domain name or applying for other Service(s) you also represent that the statements in your application are true and you also represent that the domain name is not being registered or the Services being procured for any unlawful purpose. You acknowledge that providing inaccurate information or failing to update information promptly will constitute a material breach of this Agreement and will be sufficient basis for suspension or termination of Services to you. You further agree that your failure to respond for over ten (10) calendar days to inquiries by us concerning the accuracy of account and WHOIS contact information shall constitute a material breach of this Agreement and will be sufficient basis for suspension or termination of Service(s) to you. As indicated elsewhere in this Agreement, you understand that it is important for you to regularly monitor email sent to the email address associated with your account and WHOIS contact information because, among other reasons, if a dispute arises regarding a domain name(s) or other Service(s), you may loose your rights to the domain name(s) or your right to receive the Service(s) if you do not respond appropriately to an email sent in conjunction therewith.

ACCESSING YOUR ACCOUNT AND AN IMPORTANT LIMITATION OF OUR LIABILITY: In order to change any of your account or domain name WHOIS information, you must access your account with your Primary Service Provider (if any), or your account with us. Please safeguard your account login identifier and password from any unauthorized use. You agree that any person in possession of you account login identifier and password will have the ability and your authorization to modify your account and domain name information. We will take reasonable precautions to protect the information we obtain from you from loss, misuse, unauthorized access or disclosure, alteration or destruction of that information and that such reasonable precautions include procedures for releasing account access information to parties who claim to have lost account access information. You agree that, if we take reasonable precautions in relation thereto, that IN NO EVENT SHALL WE BE LIABLE IF SUCH REASONABLE PRECAUTIONS DO NOT PREVENT THE UNAUTHORIZED USE OR MISUSE OF YOUR ACCOUNT IDENTIFIER OR PASSWORD AND THAT, EVEN IF WE FAIL TO TAKE REASONABLE PRECAUTIONS, THAT OUR LIABILITY UNDER ANY CIRCUMSTANCES SHALL BE LIMITED BY THE LIMITATION OF LIABILITY PROVISION FOUND BELOW IN THIS AGREEMENT. If you contact us alleging that a third party has unauthorized access to your account or domain names, you agree that we may charge you administrative fees of $50 (US dollars) per hour for our time spent in relation to the matter, regardless of whether or not we return control over the account and/or domain names to you.

TRANSFERS: You agree that transfer of your domain name(s) services shall be governed by ICANN's transfer policy, available at http://www.icann.org/transfers/, as this policy may be modified from time to time. You agree that we may place a "Registrar Lock" on your domain name services and that this will prevent your domain name services from being transferred without your authorization, though we are not required to do so. By allowing your domain name services to remain locked, you provide express objection to any and all transfer requests until the lock is removed. To transfer your domain name(s) you should first login to your account to lock or unlock your domain name(s) and/or to obtain the EPP "AuthCode" which is required to transfer domain name services in an EPP registry (such as .org). Alternatively, you should contact your Primary Service Provider to have your domain name(s) services locked or unlocked or to obtain the EPP "AuthCode." If your Primary Service Provider is unresponsive, you may contact us to have your domain name(s) locked or unlocked or to obtain the EPP "AuthCode" though we may first contact your Primary Service Provider to request that the Primary Service Provider address the request. Only the registrant and the administrative contacts listed in the WHOIS information may approve or deny a transfer request. Without limitation, domain name services may not be transferred within 60 days of initial registration, within 60 days of a transfer, if there is a dispute regarding the identity of the domain name registrant, if you are bankrupt, or if you fail to pay fees when due. We will follow the procedures for both gaining and loosing registrars as outlined in ICANN's transfer policies. Transfer requests typically take five business days to be processed. A transfer will not be processed if, during this time, the domain name registration services expire in which event you may need to reinstate the transfer request. You may be required to resubmit a transfer request if there is a communication failure or other problem at either our end or at the registry. AS A CONSEQUENCE, YOU ACKNOWLEDGE THAT YOU ASSUME ALL RISK FOR FAILURE OF A TRANSFER IF THE TRANSFER PROCESS IS INITIATED CLOSE TO THE END OF A REGISTRATION TERM.

PRIVACY POLICY: You agree and consent that we will make available the domain name registration information you provide or that we otherwise maintain to the following parties: ICANN, the registry administrator(s), and to other third parties as ICANN and applicable laws may require or permit (including through web-based and other on-line WHOIS lookup systems), whether during or after the term of your domain name registration services of the domain name. You hereby irrevocably waive any and all claims and causes of action you may have arising from such disclosure or use of such information. Additionally, you acknowledge that ICANN may establish or modify the guidelines, limits and/or requirements that relate to the amount and type of information that we may or must make available to the public or to private entities, and the manner in which such information is made available. Information regarding ICANN's guidelines and requirements regarding WHOIS can be found at http://www.icann.org/registrars/wmrp.htm, http://www.icann.org/registrars/wdrp.htm, and elsewhere on the ICANN website at http://www.icann.org/index.html. You agree that we may make publicly available, or directly available to third parties, some, or all, of the information you provide, for purposes of inspection (such as through our WHOIS service) or for targeted marketing and other purposes as required or permitted by applicable laws. One of the ways that we may make some or all of the information you provide available to the public or third parties is by way of bulk WHOIS data access provided to third parties who enter into a bulk WHOIS data access agreement with us. Please click here if you would like your WHOIS information made available for bulk access. We reserve the right to discontinue providing bulk WHOIS data access to third parties.

OWNERSHIP OF INFORMATION AND DATA: You agree and acknowledge that we own all database, compilation, collective and similar rights, title and interests worldwide in our domain name database, and all information and derivative works generated from the domain name database. You further agree and acknowledge that we own the following information for those registrations for which we are the registrar: (a) the original creation date of the registration, (b) the expiration date of the registration, (c) the name, postal

eNom 000047

address, e-mail address, voice telephone number, and where available fax number of all contacts for the domain name registration, (d) any remarks concerning the registered domain name that appear or should appear in the WHOIS or similar database, and (e) any other information we generate or obtain in connection with the provision of domain name registration services, other than the domain name being registered, the IP addresses of the primary nameserver and any secondary nameservers for the domain name, and the corresponding names of those nameservers. We do not have any ownership interest in your specific personal registration information outside of our rights in our domain name database.

AGENTS AND LICENSES: You agree that, if you are registering a domain name for or on behalf of someone else, you represent that you have the authority to nonetheless bind that person as a principal to all terms and conditions provided herein. You agree that if you license the use of the domain name registered to you to a third party, you nonetheless remain the domain name holder of record, and remain responsible for all obligations under this Agreement, including but not limited to payment obligations, and providing (and updating, as necessary) both your own full contact information, and accurate technical, administrative, billing and zone contact information adequate to facilitate timely resolution of any problems that arise in connection with the domain name and domain name registration.

USE OF FREE SERVICES: In consideration for providing additional optional Services for which we do not charge an additional fee, including, but not limited to, URL forwarding, email forwarding, free parking page, free website hosting, free email services, or other services which we may introduce from time to time but for which there is not a separate fee ("Free Services"), you agree that, if you use such Free Services, we may display advertising in conjunction therewith through the use of pop-up or pop-under browser windows, banner advertisements, audio or video streams, appendices to emails, or other similar advertising means, and that we may aggregate related usage data by means of cookies and other similar means. You agree that from time to time we may provide you with free or low-cost domain name(s) services ("Promotional Name(s)"). If we do so, the services for the Promotional Name(s) will be placed in the same account as your other domain name(s) and you will be listed as the registrant, though we may point the Promotional Name to IP address(es) of our choosing. If you want to assume control over the services provided to the Promotional Name, including the right to transfer or push the Promotional Name service to other registrars or other accounts or the ability to control the DNS settings for the Promotional Name, you must pay the promotional registration fee or renewal fee, if any, and agree to the terms of this Agreement with respect to such Promotional Name(s). If you do not want the Promotional Name services, you may request that we be removed as the registrant of such Promotional Names and we will be listed as the domain name registrant. Alternatively, you may contact us or your Primary Service Provider to request that we delete the Promotional Name from the namespace. For any domain name services, including these Promotional Names, for which you are listed as registrant but for which you do not pay the registration or renewal fee, you agree that we may assign name-servers to the domain name and point the domain name to IP address(es) designated by us until the registration or renewal fee is paid.

AFTER EXPIRATION OF THE TERM OF A DOMAIN NAME REGISTRATION: Immediately after the expiration of the term of domain name registration services and before deletion of the domain name in the applicable registry's database, you acknowledge that we may direct the domain name to name-servers and IP address(es) designated by us, including, without limitation, to no IP address or to IP address(es) which host a parking page or a commercial search engine that may display advertisements, and you acknowledge that we may either leave your WHOIS information intact or that we may change the contact information in the WHOIS output for the expired domain name so that you are no longer the listed registrant of the expired domain name.

Reactivation Period Process. For a period of approximately 30 days after expiration of the term of domain name registration services, you acknowledge that we may provide a procedure by which expired domain name registration services may be renewed. You acknowledge and agree that we may, but are not obligated to, offer this process, called the "reactivation period." You acknowledge that you assume all risks and all consequences if you wait until close to or after the expiration of the original term of domain name registration services to attempt to renew the domain name registration services. You acknowledge that we, for any reason and in our sole discretion, may choose not to offer a reactivation period and that we shall not be liable therefore. You acknowledge that reactivation period renewal processes, if any, may involve additional fees which we and your Primary Service Provider may determine. You acknowledge and agree that we may make expired domain name services(s) available to third parties, that we may auction off the rights to expired domain name services (the auction beginning close to the end or after the end of the reactivation period), and/or that expired domain name registration services may be re-registered to any party at any time.

After the reactivation period, you agree that we may either (i) discontinue the domain name registration services at any time thereafter, (ii) that we may pay the registry's registration fee or otherwise provide for the registration services to be continued, or, (iii) if we auctioned the domain name services to a third party, that we may transfer the domain name registration services to such third party.

In the case of (i), above, you acknowledge that certain registry administrators may provide procedures by which discontinued domain name registration services may nonetheless be renewed. You acknowledge and agree that we may, but are not obligated to, participate in this process, typically called the "Redemption Grace Period" ("RGP"). You acknowledge that we, for any reason and in our sole discretion, may choose not to participate in the RGP process with respect to any or all of your domain name registration services and that we shall not be liable therefore. If available, RGP typically ends between 30 and 42 days after the end of the reactivation period of the domain name services, as the reactivation period applied to you. The typical RGP fee is $160 plus any registration fees. You agree that we are not obliged to contact you to alert you that the domain name registration services are being discontinued.

In the case of (ii), above, you acknowledge that we may then set the name-servers and the DNS settings for the domain name services, that we set the DNS to point to no IP address or to IP address(es) which host parking page(s) or a commercial search engine that may display paid advertisements, and you acknowledge that we may change the contact information in the WHOIS output for the expired domain name so that you are no longer the listed registrant of the expired domain name. You acknowledge that we do not have to pay you any of the proceeds, if any, we may earn as a result. You agree that we are not obliged to contact you to alert you that the domain name registration services are being continued. In this case, the domain name will be designated as being in the extended redemption grace period ("ERGP"), and you will be allowed to assume, during the first 120 days of the then extant registration term, complete management of the domain name services, including the right to control the DNS settings,

eNom 000048

provided that you pay a fee of $160 (US dollars) plus any registration fees. After the end of the 120-day period, if you do not exercise your rights under this provision, you agree that you have abandoned the domain name services, and relinquish all rights and use of the domain name services.

In the case of (iii), above, the third party who won the auction for the domain name services will control the domain name services, including control over the WHOIS information and the DNS settings. You may recover the domain name registration services for a period of up to 42 days after the end of the reactivation period, as such reactivation period applied to you. You agree that we are not obliged to contact you to alert you that the domain name registration services are or were auctioned. You acknowledge that we do not have to pay you any of the proceeds, if any, we may earn as a result of such an auction. To exercise your rights to recover auctioned domain name services, you must contact us and provide us with a certified letter addressed to "Expiration Recovery" and including documents setting forth your identity and address, which identity and address must be the same as that of the registrant as it was listed in the WHOIS information for the domain name services prior to expiration, a copy of a commonly accepted (in the United States) picture ID (such as a drivers license or passport) which supports your identity and address claim, a front and back photocopy of your credit card and you must a statement authorizing payment of the reinstatement fee to such credit card, which is $160 plus any registration fees. In doing so, you must provide us with sufficient time to allow us to receive and evaluate your documents and to contact the auction winner prior to the end of 30 days after the end of the reactivation period of the domain name services.

LIMITATION OF LIABILITY:

YOU AGREE THAT WE WILL NOT BE LIABLE FOR ANY (1) SUSPENSION OR LOSS OF THE SERVICE(S), INCLUDING, WITHOUT LIMITATION, DOMAIN NAME REGISTRATION SERVICES, (2) USE OF THE SERVICE(S), INCLUDING, WITHOUT LIMITATION DOMAIN NAME REGISTRATION SERVICES, (3) INTERRUPTION OF OUR SERVICES OR INTERRUPTION OF YOUR BUSINESS, (4) ACCESS DELAYS OR ACCESS INTERRUPTIONS TO OUR WEB SITE(S) OR SERVICE(S) OR DELAYS OR ACCESS INTERRUPTIONS YOU EXPERIENCE IN RELATION TO A DOMAIN NAME REGISTERED WITH US; (5) LOSS OR LIABILITY RESULTING FROM ACTS OF OR EVENTS BEYOND OUR CONTROL (6) DATA NON-DELIVERY, MIS-DELIVERY, CORRUPTION, DESTRUCTION OR OTHER MODIFICATION; (7) THE PROCESSING OF AN APPLICATION FOR A DOMAIN NAME REGISTRATION; (8) LOSS OR LIABILITY RESULTING FROM THE UNAUTHORIZED USE OR MISUSE OF YOUR ACCOUNT IDENTIFIER OR PASSWORD; OR (9) APPLICATION OF THE DISPUTE POLICY. YOU ALSO AGREE THAT NEITHER WE NOR YOUR PRIMARY SERVICE PROVIDER WILL BE LIABLE FOR ANY INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND (INCLUDING LOST PROFITS) REGARDLESS OF THE FORM OF ACTION WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, EVEN IF WE OR YOUR PRIMARY SERVICE PROVIDER HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL OUR OR YOUR PRIMARY SERVICE PROVIDER'S MAXIMUM AGGREGATE LIABILITY EXCEED THE TOTAL AMOUNT PAID BY YOU FOR REGISTRATION OF THE DOMAIN NAME, BUT IN NO EVENT GREATER THAN FOUR HUNDRED DOLLARS ($400.00 US Dollars). BECAUSE SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES, OUR AND/OR YOUR PRIMARY SERVICE PROVIDER'S LIABILITY SHALL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY LAW.

INDEMNITY: With respect to ICANN, the registry operators, us, and your Primary Service Provider, as well as the contractors, agents, employees, officers, directors, shareholders, and affiliates of such parties, you agree to release, indemnify, and hold such parties harmless from all liabilities, claims and expenses, including attorney's fees and court costs, for third party claims relating to or arising under this Agreement, the Service(s) provided hereunder, or your use of the Service(s), including, without limitation, infringement by you, or by anyone else using the Service(s) we provide to you, of any intellectual property or other proprietary right of any person or entity, or from the violation of any of our operating rules or policies relating to the Service(s) provided. When we may be involved in a suit involving a third party and which is related to our Service(s) to you under this Agreement, we may seek written assurances from you in which you promise to indemnify and hold us harmless from the costs and liabilities described in this paragraph. Such written assurances may include, in our sole discretion, the posting of a performance bond(s) or other guarantees reasonably calculated to guarantee payment. Your failure to provide such assurances may be considered by us to be a breach of this Agreement by you and may, in our sole discretion, result in loss of your right to control the disposition of domain name services for which you are the registrant and in relation to which we are the registrar of record. This indemnification is in addition to any indemnification required under the UDRP.

REPRESENTATIONS AND WARRANTIES: YOU REPRESENT THAT, TO THE BEST OF YOUR KNOWLEDGE AND BELIEF, NEITHER THE REGISTRATION OF A DOMAIN NAME NOR THE MANNER IN WHICH IT IS DIRECTLY OR INDIRECTLY USED NOR THE USE OF OTHER OF THE SERVICE(S) INFRINGES THE LEGAL RIGHTS OF A THIRD PARTY. YOU FURTHER REPRESENT AND WARRANT THAT ALL INFORMATION PROVIDED BY YOU IN CONNECTION WITH YOUR PROCUREMENT OF THE SERVICE(S) IS ACCURATE. ALL SERVICE(S) ARE PROVIDED TO YOU "AS IS" AND WITH ALL FAULTS. EXCEPT FOR OUR STATEMENT REGARDING OUR ACCREDITATION AS ICANN-APPROVED DOMAIN NAME REGISTRARS, WE MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, IN CONNECTION WITH THIS AGREEMENT OR THE SERVICE(S), INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, UNLESS SUCH REPRESENTATIONS AND WARRANTIES ARE NOT LEGALLY EXCLUDABLE. WITHOUT ANY LIMITATION TO THE FOREGOING, WE MAKE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER THAT REGISTRATION OR USE OF A DOMAIN NAME UNDER THIS AGREEMENT WILL IMMUNIZE YOU EITHER FROM CHALLENGES TO YOUR DOMAIN NAME REGISTRATION, OR FROM SUSPENSION, CANCELLATION OR TRANSFER OF THE DOMAIN NAME REGISTERED TO YOU. YOU UNDERSTAND AND AGREE THAT ANY MATERIAL AND/OR DATA DOWNLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF OUR E-MAIL FORWARDING OR OTHER EMAIL SERVICE IS DONE AT YOUR OWN DISCRETION AND RISK AND THAT YOU WILL BE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR COMPUTER SYSTEM OR LOSS OF DATA THAT RESULTS FROM THE DOWNLOAD OF SUCH MATERIAL AND/OR DATA. WE MAKE NO WARRANTY REGARDING ANY GOODS OR SERVICES PURCHASED OR OBTAINED THROUGH OUR E-MAIL SERVICE(S) OR ANY TRANSACTIONS ENTERED INTO THROUGH OUR E-MAIL SERVICE(S). NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, OBTAINED BY YOU FROM US SHALL CREATE ANY WARRANTY NOT EXPRESSLY MADE HEREIN. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF CERTAIN WARRANTIES, SO SOME OF THE ABOVE EXCLUSIONS MAY NOT APPLY TO YOU.

GOVERNING LAW AND JURISDICTION FOR DISPUTES: Except as otherwise set forth in the UDRP or any similar ccTLD policy with respect to any dispute over a domain name registration this Agreement, your rights and obligations and all actions contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Washington, as if the Agreement was

eNom 000049

eNom - domain name, web site hosting, email, registration - REGISTRATION AGREEMENT          Page 6 of 7

a contract wholly entered into and wholly performed within the State of Washington. You agree that any action brought by you to enforce this Agreement or any matter brought by you and which is against or involves us and which relates to your use of the Services shall be brought exclusively in the United States District Court for the Western District of Washington, or if there is no jurisdiction in such court, then in a state court in King County, Washington state. You consent to the personal and subject matter jurisdiction of any state or Federal court in King County, Washington state in relation to any dispute between you and us under this Agreement. You agree that service of process on you by us in relation to any dispute arising under this Agreement may be served upon you by first class mail to the address listed by you in your account and/or domain name WHOIS information or by electronically transmitting a true copy of the papers to the email address listed by you in your account and/or domain name WHOIS information. Notwithstanding the foregoing, for the adjudication of third party disputes (i.e., disputes between you and another party, not us) concerning or arising from use of domain names registered hereunder, you acknowledge and agree that you shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (a) of the domain name holder's domicile, and (b) where we are located, currently Bellevue, W.A.

NOTICES: You agree that any notices required to be given under this Agreement by us to you will be deemed to have been given if delivered in accordance with the account and/or domain name WHOIS information you have provided.

INFANCY: You attest that you are of legal age to enter into this Agreement.

GENERAL: This Agreement and the UDRP, together with all modifications, constitute the complete and exclusive agreement between you and us, and supersede and govern all prior proposals, agreements, or other communications. Nothing contained in this Agreement shall be construed as creating any agency, partnership, or other form of joint enterprise between the parties. The failure of us to require your performance of any provision hereof shall not affect the full right to require such performance at any time thereafter; nor shall the waiver by us of a breach of any provision hereof be taken or held to be a waiver of the provision itself. In the event that any provision of this Agreement shall be unenforceable or invalid under any applicable law or be so held by applicable court decision, such unenforceability or invalidity shall not render this Agreement unenforceable or invalid as a whole. We will amend or replace such provision with one that is valid and enforceable and which achieves, to the extent possible, our original objectives and intent as reflected in the original provision. This Agreement may not be amended or modified by you except by means of a written document signed by both you and an authorized representative of us.

AUCTIONS: If you participate in a domain Auction service, you agree to be bound by the terms and conditions of this Agreement, The Supplemental Terms and Conditions ("Supplemental Terms") that are part of and incorporated into this Agreement, and the terms of use as set forth by the Auction provider.

THE FOLLOWING REGISTRARS ARE REFERENCED IN THIS DOCUMENT:

| | | |
|---|---|---|
| Afterdark Domains, Incorporated | enom411, Incorporated | eNomGMP Services, Inc. |
| Arab Internet Names, Incorporated | enom413, Incorporated | eNomMX, Inc. |
| AsiaDomains, Incorporated | enom415, Incorporated | eNomnz, Inc. |
| Big House Services, Inc. | enom417, Incorporated | eNomsky |
| Blisternet, Incorporated | enom419, Incorporated | eNomToo, Inc. |
| Dagnabit, Incorporated | enom421, Incorporated | eNomV, Inc. |
| DBMS, Incorporated | enom423, Incorporated | eNomWorld, Inc. |
| Domain Rouge, Inc. | enom425, Incorporated | eNomX, Inc. |
| Domainnovations, Incorporated | enom427, Incorporated | Entertainment Names, Incorporated |
| Dropoutlet, Incorporated | enom429, Incorporated | Extra Threads Corporation |
| eNom, Incorporated | enom431, Incorporated | FeNomINAL, Inc. |
| eNom Corporate, Inc. | enom433, Incorporated | Fushi Tarazu, Incorporated |
| eNom1, Inc. | enom435, Incorporated | Gunga Galunga, Inc. |
| eNom2, Inc. | enom437, Incorporated | Indirection Identity Corporation |
| eNom3, Inc. | enom439, Incorporated | Internet Internal Affairs Corporation |
| enom371, Incorporated | enom441, Incorporated | Kingdomains, Incorporated |
| enom373, Incorporated | enom443, Incorporated | Mark Barker Incorporated |
| enom375, Incorporated | enom445, Incorporated | Mobile Name Services, Incorporated |
| enom377, Incorporated | enom447, Incorporated | Name Nelly Corporation |
| enom379, Incorporated | enom449, Incorporated | Name Thread Corporation |
| enom381, Incorporated | enom451, Incorporated | Nerd Names Corporation |
| enom383, Incorporated | enom453, Incorporated | Nom Infinitum Corporation |
| enom385, Incorporated | enom455, Incorporated | One Putt, Inc |
| enom387, Incorporated | enom457, Incorporated | PostalDomains, Incorporated |
| enom389, Incorporated | enom459, Incorporated | Private Domains, Incorporated |
| enom391, Incorporated | enom461, Incorporated | Retail Domains, Inc. |
| enom393, Incorporated | enom463, Incorporated | SBSNames, Incorporated |
| enom395, Incorporated | enom465, Incorporated | Searchnresq, Inc. |
| enom397, Incorporated | enom467, Incorporated | Sicherregister, Incorporated |
| enom399, Incorporated | enom469, Incorporated | Sipence, Incorporated |
| enom403, Incorporated | eNom5, Inc. | Sssasss, Incorporated |
| enom405, Incorporated | eNomAu, Inc. | Traffic Names, Incorporated |
| enom407, Incorporated | eNombre Corporation | TravelDomains, Incorporated |
| enom409, Incorporated | eNomEU, Inc. | Whiteglove Domains, Incorporated |
| | eNomfor, Inc. | |

## ADDITIONAL REGISTRY REQUIREMENTS

eNom 000050

Listed below are additional contractual requirements that you, the registrant, must agree to should you
desire to register a domain name in these registries:

| | | | | |
|---|---|---|---|---|
| .AC | .AM | .ASIA | .AT | .BE |
| .BIZ | .BZ | .CA | .CC | .CN |
| .DE | .EU | .FM | .GS | .IN |
| .INFO | .IO | .IT | .JOBS | .JP |
| .KIDS.US | .LA | .ME | .MOBI | .MS |
| .MX | .NAME | .NL | .NU | .NZ |
| .SH | .TC | .TM | .TV | .TW |
| .UK | .US | .VG | .WS | |

CentralNIC (.xx.COM, .xx.NET)

---

welcome to eNom | services | news | pricing | statistics | maintenance | about us | careers | press releases | whois | sitemap | privacy

© eNom Inc. 1998-2008 Terms and Conditions
Partners: search the web

User's Choice Award       · com · net · tv 

demand MEDIA Services

eNom 000051